**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                Plaintiff,

v.

RED ROOF INNS, INC.,

                Defendant.

Case No.: 3:20-cv-00381
Hon. Judge Thomas M. Rose

## <u>DEFENDANT RED ROOF INNS, INC.'S AMENDED MOTION FOR SUMMARY JUDGMENT</u>

Defendant Red Roof Inns, Inc. ("RRI") moves the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure and all other applicable law, for summary judgment as to the claims asserted by Plaintiff, the Equal Employment Opportunity Commission's ("Plaintiff). Defendant is entitled to summary judgment for the following reasons: (1) Wesley Derby failed to request an accommodation from RRI; (2) the Plaintiff has not articulated that a reasonable accommodation exists and is "objectively reasonable"; (3) the Plaintiff has failed to establish that a 'reasonable' accommodation is possible; and (4) the Plaintiff has not shown Mr. Derby was "otherwise qualified" for the position, as required to establish a prima facie case and to survive summary judgment.

This Motion is fully supported by the following memorandum in support and attached Exhibits. A proposed order granting summary judgment is attached.

Respectfully submitted,

/s/ Katherine L. Kennedy
Katherine L. Kennedy (0079566)
Andrew J. Weber (0093055)
LEWIS, BRISBOIS, BISGAARD & SMITH, LLP
250 East Fifth Street, Suite 2000
Cincinnati, Ohio 45202
kate.kennedy@lewisbrisbois.com
andrew.weber@lewisbrisbois.com
Tel. 513.808.9911 / Fax 513.808.9912
*Attorneys for Defendant,*
*Red Roof Inns, Inc.*

## MEMORANDUM IN SUPPORT

### I. INTRODUCTION

Plaintiff makes several contentions that RRI's conduct deprived Wesley Derby of equal employment opportunities because of his disability. Plaintiff alleges that RRI "was aware of Derby's disability and failed to accommodate Derby to allow for his participation in the information [sic] seminar." (Complaint, Doc. No. 1 ¶ 26, PageID #: 5.) Furthermore, Plaintiff alleges that RRI "failed to accommodate Derby to allow for his participation in the application process for the promotion." Id. at ¶ 27, PageID #: 5. Plaintiff also alleges that RRI "failed to engage in the interactive process" and ultimately denied "Derby the promotion because of his disability and need for accommodation." Id. ¶¶ 28-29, PageID #: 5-6.

Under binding Sixth Circuit precedent, Mr. Derby was required to request an accommodation. *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 870 (6th Cir. 2007). It is well-established that as part of a prima facie case of failure to accommodate under the ADA, a plaintiff bears the initial burden of proposing an accommodation, showing an accommodation is possible, and "showing that the accommodation is objectively reasonable." *Id.*

Plaintiff has failed to meet this burden. The undisputed facts demonstrate that Mr. Derby did not request an accommodation, nor was he "otherwise qualified" for the Property Connectivity Coordinator (hereinafter "PCC") position. Furthermore, Plaintiff has not demonstrated that a reasonable accommodation existed in 2018 to allow Wesley Derby to perform the essential functions of the PCC position, and Plaintiff has failed to meet its initial burden of establishing an accommodation is "objectively reasonable." For these reasons, RRI is entitled to summary judgment as to all of Plaintiff's claims.

## II.     UNDISPUTED FACTUAL BACKGROUND

### A.     Factual Basis for Plaintiff's Claims

Wesley Derby is a visually impaired individual who formally worked at RRI's Contact Center beginning in 2016. (*See* Complaint, Doc. No. 1 at ⁋ 13, PageID #: 4.)  Between 2016 and 2018, Mr. Derby was promoted within the company several times. (*See* attached selected excerpts of Deposition of Wesley Derby ("Derby Depo."), attached as Exh. A, at pp. 31, 77-78, 84.)

Throughout his employment at RRI, Mr. Derby performed his job with the aid of Jobs Access with Speech ("JAWS") software. (Complaint, Doc. No. 1 at ⁋ 15, PageID #:4.)  JAWS is a computer screen reading program that allows visually impaired users to read the screen using text-to-speech output. (*See* attached selected excerpts of Deposition of Dr. Mark Tudela ("Tudela Depo."), attached as Exh. B, at Exh. 8.)  Scripting ensures a JAWS user can access and interact with computer software. *Id*. JAWS scripting is best utilized, and software updates cause the least amount of disruption to the company, on internal programs where updates occur in an orderly, planned, and controlled manner. *Id*. at pp. 128-129.

On April 23, 2018, Cheryl Eichelberger, the Online Connectivity Supervisor at the time, internally announced a job opening for the PCC position via email. (Derby Depo. at 218.)  Mr. Derby did not respond to this initial email regarding the open position. *Id*. On May 2, 2018, Ms. Eichelberger sent another internal email regarding an informational seminar related to the Online Connectivity Team. *Id*.

In response to Ms. Eichelberger's e-mail about the informational seminar, Mr. Derby stated that he was "interested" in checking out the seminar and "possibly applying." (*See* Exh. 1 to Derby Depo.)  However, he did not apply for the position or complete a Position Interest Form at that time. (*See* attached selected excerpts of Deposition of Shanna Wright ("Wright Depo."), attached

as Exh. C, at p. 124; attached selected excerpts of Deposition of Cheryl Eichelberger ("Eichelberger Depo."), attached as Exh. D, at Exh. 4; and Derby Depo. at 153.)

The following email exchange consists of the entirety of Mr. Derby's communications with Ms. Eichelberger regarding the informational seminar and his interest in the PCC position.

**From:** Cheryl Eichelberger
**Sent:** Wednesday, May 02, 2018 1:32 PM
**To:** Cheryl Eichelberger <CEichelberger@RedRoof.com>
**Cc:** Janet Corder <JCorder@RedRoof.com>
**Subject:** Online Connectivity Information Seminar

## EXCITING NEWS!!!!

With the recent posting for the open position for the _Online Connectivity Team_ , we have decided to hold an **Online Connectivity Information Seminar!**
We have also decided to extend the deadline for you to get your Position Interest Form (attached) and resume to your supervisor to the end-of-day on Friday May 11th.

**What:** Online Connectivity Information Seminar
**When:** Tuesday May 8th, 10:00 – 11:00 am
**Where:** Contact Center - Training Room
**How:** "Reply all" to this email stating that you would like to attend and staffing will get it added to your schedule.
**Why:** To help employees interested in joining the Online Connectivity Team get a better understanding of the position.

Please let me know if you have any questions. I look forward to seeing you there!

Thanks,
Cheryl



**Cheryl Eichelberger | Online Connectivity Supervisor, Distribution Services**
**P** 614.225.5130 | **F** 614.225.5263 | **Online Connectivity P** 844.899.2425
Red Roof Inns, Inc. • Contact Center • 2071 N. Bechtle Ave. PMB 226 • Springfield, OH 45504
ceichelberger@redroof.com | redroof.com

   

**From:** Wesley C. Derby
**Sent:** Wednesday, May 2, 2018 3:22 PM
**To:** Cheryl Eichelberger <CEichelberger@RedRoof.com>
**Cc:** Janet Corder <JCorder@RedRoof.com>
**Subject:** RE: Online Connectivity Information Seminar

Good Afternoon.

I'm interested in attending...However, is there an option to attend via Skype or some other remote option? Being blind, I don't drive, and the Uber ride from Columbus to Springfield and back would be a couple days' pay. So, if there's a distance option, I'm interested in checking this out and possibly applying.

Thanks.



Wesley Derby | Guest Relations Specialist, Contact Center

**From:** Cheryl Eichelberger
**Sent:** Thursday, May 03, 2018 11:01 AM
**To:** Wesley C. Derby <wderby@RedRoof.com>
**Cc:** Janet Corder <JCorder@RedRoof.com>
**Subject:** RE: Online Connectivity Information Seminar

Good morning Wesley.
Thanks so much for your interest. Unfortunately, the systems that we work with do not integrate with the JAWS system, so we are not able to accommodate as far as hiring. However, if you are looking to advance your knowledge of what happens behind the scenes, we are happy to accommodate. I just don't want you to waste your time if you were looking to apply.

With this being our first seminar, we would like to get the bugs worked out before we offer it via Skype. We will be holding more seminars in the near future for informational purposes for other departments, so it may be more beneficial for you to attend one of those when we can Skype you in. ☺

Please let me know if you have any questions.

Thanks,
Cheryl

Cheryl Eichelberger | Online Connectivity Supervisor, Distribution Services
**P** 614.225.5130 | **F** 614.225.5263 | **Online Connectivity P** 844.899.2425
Red Roof Inns, Inc. • Contact Center • 2071 N. Bechtle Ave. PMB 226 • Springfield, OH 45504
ceichelberger@redroof.com | redroof.com

**From:** Wesley C. Derby
**Sent:** Thursday, May 3, 2018 11:03 AM
**To:** Cheryl Eichelberger <CEichelberger@RedRoof.com>
**Subject:** RE: Online Connectivity Information Seminar

Hi, Cheryl.

Thanks so much for getting back to me. I'd definitely be interested in learning more in future. I'm always looking to diversify my knowledge, and move up as far as I can in the company.

Thanks again.

Wes

RedRoof | RedRoof Plus+

Wesley Derby | Guest Relations Specialist, Contact Center
P 800-554-4555 | F 937-325-9620
Red Roof Inn, Inc • The Red Roof Building • 1650 Upper Valley Pike • Springfield, Ohio 45504
wderby@redroof.com | redroof.com

(Eichelberger Depo., at Ex. 4.)

The above email exchange consists of the entirety of communications between Ms. Eichelberger and Mr. Derby and serves as the sole basis for Plaintiff's claims in this case. Plaintiff alleges that in this e-mail exchange, RRI "failed to accommodate Derby to allow for his participation in the application process for the promotion." (Complaint, Doc. No. 1 ¶ 27, PageID #5.) Plaintiff also alleges that RRI "failed to engage in the interactive process" and ultimately denied "Derby the promotion because of his disability and need for accommodation." *Id*. ¶¶ 28-29, PageID #: 5-6.

Plaintiff's claims fail, however, because it has not identified a reasonable accommodation to allow Mr. Derby to perform the essential functions of a PCC in 2018. Furthermore, the undisputed facts demonstrate that Mr. Derby did not request any accommodation whatsoever related to his disability, and Plaintiff has failed to demonstrate Mr. Derby was "otherwise qualified" for the PCC position. For these reasons, RRI is entitled to summary judgment.

### B.  JAWS Integration with Applications used in the PCC role.

Due to the known unpredictability and constantly changing nature of independent, third-party websites utilized in the PCC position, and the inherent limitations of JAWS' capabilities, Ms. Eichelberger informed Mr. Derby, via email, that the systems utilized by a PCC did not integrate with the JAWS software. (Wright Depo., pp. 112-114, 126-128; Eichelberger Depo. at Exh. 4.)

An essential function of a PCC is to access, interact with, and utilize many third-party websites that are outside of the RRI internal system and, therefore, outside of RRI's control. (*See* Wright Depo. at pp. 66-71; Tudela Depo. at p. 97; Eichelberger Depo, at pp. 57-66.)  The third-party websites include online travel agencies, extranets requiring login credentials, and other public, independent websites. (*See* Wright Depo., pp. 66-71; Tudela Depo., pp. 115-116; Eichelberger Depo., pp. 57-66.)  As Ms. Eichelberger explained in her deposition, a PCC uses online travel agency sites every day, and much of the job is performed on these third-party sites. (Eichelberger Depo., pp. 58 – 68.)

The online travel agency websites utilized by the PCC install changes to their software frequently, on a weekly and sometimes even daily basis. (*See* Wright Depo., pp. 112-113.) Because these sites are outside of RRI's control, the changes to their software are performed without notice to RRI. (Wright Depo. at 126; Tudela Depo., Ex. 8.) When a third-party website updates its software, the JAWS scripting previously installed for that particular website will be affected and may no longer be compatible with the third-party website's updated software.  (Tudela Depo. at pp 130-131; Tudela Depo., Ex. 8.) Due to the frequent updates, lack of notice and unpredictability of the third-party websites, RRI is unable to ensure accessibility to the essential websites used in the PCC position. (Wright Depo. at pp. 112-114, 126-128; Tudela Depo., Ex. 8.) It is impossible for the JAWS to be scripted in a predictive way to ensure future compatibility with

unknown updates to the third-party websites utilized in the PCC position. (Tudela Depo. at pp. 130-131; Tudela Depo., Ex. 8.)

When a third-party website installs one of its frequent updates, there may be a period of "downtime" from the time the update is identified by a JAWS user who is unable to access the website, or a specific feature of the website, until it can be addressed by a specialized JAWS scripter. (Wright Depo. at pp. 112-114; Tudela Depo. at pp. 131-134; Tudela Depo., Ex. 8.) During these periods of downtime, and without access to the third-party websites, JAWS user would be unable to perform the essential functions of a PCC. (*Id*.; Eichelberger Depo. at pp. 57-66.) Downtime is most common for JAWS user who utilizes scripting and third-party websites due to the frequency and unpredictability of updates. (*Id.;* Tudela Depo., p. 134.) RRI is unable to plan for, or reduce the inevitable disruption caused by downtime resulting from updates to third party websites because the updates are installed without notice to RRI. (Wright Depo. at pp. 112-113, 126; Tudela Depo. at pp. 130-131; Tudela Depo., Ex. 8.)

Wesley Derby himself admits to experiencing downtime when there are complications with JAWS scripting and accessibility barriers. (Derby Depo., pp. 97-98.) For example, when Mr. Derby was promoted to the Guest Relations department at RRI, he experienced three weeks of downtime due to accessibility barriers and the availability of qualified JAWS scripters. *Id*. During this period of downtime, Mr. Derby was unable to perform the functions of the new position. *Id.*

III.   **APPLICABLE LAW**

A.  **Claims for Failure to Accommodate**

To survive summary judgment, and to establish a prima facie case of failure to accommodate, an ADA plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) his

employer knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018). As part of this prima facie case, a plaintiff "bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 870 (6th Cir. 2007). Summary judgment is appropriate where a plaintiff fails to demonstrate that a requested accommodation is reasonable. *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 635 (6th Cir. 1998).

In this case, Plaintiff has failed to establish several components required to make a prima facie case and to survive summary judgment. Plaintiff has failed to establish Mr. Derby requested an accommodation; that Mr. Derby was "otherwise qualified for the position;" and that a reasonable accommodation is possible and "objectively reasonable." For these reasons, RRI is entitled to summary judgment.

### 1. RRI is Entitled to Summary Judgment Because Wesley Derby Did Not Request an Accommodation.

Under the ADA, and controlling Sixth Circuit precedent, "[t]he plaintiff . . . 'bears the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable.'" *Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x 104, 111 (6th Cir. 2009) (quoting *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 870 (6th Cir. 2007)). As part of this initial burden, the plaintiff must "show that he requested the specific accommodation; a plaintiff may not rely on accommodations that he did not request." *Manigan v. Southwest Ohio Reg'l Transit Auth.*, 385 Fed. Appx. 472 (6th Cir. 2010); *see also*, *Aldini v. Kroger Co. of Michigan,* 628 F. App'x 347, 350-51 (6th Cir. 2015) (employee bears the burden of requesting a reasonable accommodation and thus if the employee does not propose an accommodation, the employee's ADA claim must fail).

The Sixth Circuit has explained:

> Our case law establishes no bright-line test for when the form of an employee's request is sufficiently clear to constitute a request for an accommodation. On one hand, we have held that the ADA does not require employees to 'use the magic words 'accommodation' or even 'disability.' On the other hand, '[t]he employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation.' The employee also must make it clear that the request is being made because of the employee's disability. *Judge v. Landscape Forms, Inc.*, No. 14-1362, 592 Fed. Appx. 403, 2014 (6th Cir. 2014) (internal citations omitted).

The ADA's reasonable accommodation requirement does not apply unless "triggered by a request" from the employee. *Alsept v. Honda of Am. Mfg.*, 2013 U.S. Dist. LEXIS 77530 (S.D. Ohio June 3, 2013). The employee's request must be "sufficiently direct and specific," giving notice that he needs a special accommodation. *Id.* A disabled employee who requires an accommodation "is saddled with the burden of proposing an accommodation and proving that it is reasonable." *Jakubowski v. Christ Hosp., Inc*., 627 F.3d 195, 202 (6th Cir. 2010).

### a. **Wesley Derby did not request an accommodation for the PCC position.**

This e-mail correspondence between Mr. Derby and Ms. Eichelberger constitutes the only instance of Mr. Derby expressing interest in the PCC position. Plainly stated, the email exchange does not establish Mr. Derby requested an accommodation for the PCC position. Mr. Derby's email cannot be interpreted as a "request for a specific accommodation" as it relates to the PCC position, as required by law to survive summary judgment. By his own admission, Mr. Derby testified he *never* requested an accommodation while at Red Roof. (Derby Depo., pp. 124-125.) Indeed, had Mr. Derby intended to request an accommodation, per RRI handbook, he should have directed his request to the Human Resources Department. (*See* excerpts from Deposition of Jennifer Wayman, attached as Exh. E, p. 40 and Exh. 1.)

Before their limited email exchange, Ms. Eichelberger did not know Mr. Derby (Eichelberger Depo., pp. 81-82). She was not familiar with Mr. Derby's JAWS capabilities, knowledge, or work history. (Id. at 97.) Because Mr. Derby failed to request an accommodation, Ms. Eichelberger correctly did not interpret his email as a request for an accommodation. (Id. pp. 94-95.)

If Mr. Derby knew of a specific accommodation, or if he knew his skill set was superior to other JAWS users that would allow him to perform the role when others could not, the law requires him to request that specific accommodation. The law recognizes an employee is in the best position to request a specific accommodation. The controlling law required Mr. Derby to request a specific accommodation and his failure to do so is fatal to the Plaintiff's claims.

**b. RRI did not deny Mr. Derby the opportunity to attend the informational seminar but offered Mr. Derby a reasonable accommodation for attending the seminar in the near future.**

Mr. Derby was not denied the opportunity to attend an informational seminar, but rather, was asked to wait until Ms. Eichelberger was able to determine how to present the seminar remotely in the near future. A disabled person is not entitled to an accommodation of his choice but rather a reasonable accommodation given the circumstances. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004).

Requesting Mr. Derby wait until a date "in the near future" to attend the seminar is objectively reasonable. Mr. Derby's email response indicates that Mr. Derby was satisfied with this compromise and stated that he was "looking forward to more seminars in the future." Defendant's suggested accommodation is reasonable given the circumstances.

### 2. RRI is Entitled to Summary Judgment Because Plaintiff Has Failed to Meet its Burden of Showing an Accommodation is Objectively Reasonable.

As part of its initial burden, the plaintiff must show "that the [proposed] accommodation is reasonable in the sense both of efficacious and of proportional to costs." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996). Although Mr. Derby never requested an accommodation, Plaintiff likewise has not shown an accommodation is possible and objectively reasonable.

 "When the employee seeks a reasonable accommodation, he must establish that a 'reasonable' accommodation is possible and bears a traditional burden of proof that he is qualified for the position with such reasonable accommodation." *Hoskins v. Oakland County Sheriff's Dep't*, 227 F.3d 719, 728 (6th Cir. 2000). If, however, the plaintiff fails to demonstrate a proposed accommodation is objectively reasonable, plaintiff fails to make a prima facie claim and the defendant is entitled to summary judgment. *Greiner v. Macomb Cty.*, 2019 U.S. App. LEXIS 24595 (6th Cir. 2019).

Here, Plaintiff fails to meet its initial burden and fails to establish a prima facie case. Plaintiff attempts to "skip" its initial burden of showing an accommodation is objectively reasonable and attempts to improperly place the burden on the RRI to show "undue burden." However, the controlling law dictates that Plaintiff's claims must fail because Plaintiff has failed to demonstrate that an accommodation is objectively reasonable or possible.

Generally, Plaintiff may contend that the reasonable accommodation was, effectively, "make JAWS compatible."  However, such a general statement ignores the unpredictability of uncontrolled, third-party websites and the inherent limitations of JAWS' capabilities. Plaintiff's own expert further testified he cannot provide an opinion as to whether the PCC position could be

made accessible, or whether any type of accommodation could be made by RRI in order to make the PCC position accessible for Mr. Derby.  (*See* excerpts from the deposition of Dan Buchness, Exh. F, pp. 105 – 106, 116.)  Without a showing that an accommodation is "possible," and without a showing that an accommodation is "objectively reasonable," Plaintiff's claims fail as a matter of law. RRI is entitled to summary judgment on Plaintiff's failure to accommodate claims.

### 3. Defendant is Entitled to Summary Judgment Because Plaintiff has Failed to Establish Mr. Derby was "Otherwise Qualified" for the Position.

As part of a prima facie showing required to survive summary judgment, a plaintiff must also demonstrate that the employee is "otherwise qualified" for the position, with or without a reasonable accommodation. *Williams v. AT&T Mobility Servs. LLC,* 847 F.3d 384, 391 (6th Cir. 2017). Thus, it is Plaintiff's burden to establish that Mr. Derby was "otherwise qualified" for the PCC position.

Plaintiff cannot establish that Mr. Derby was "otherwise qualified" for the position within the meaning of the ADA because the unpredictability of independent, third-party websites and the inherent limitations of JAWS' software, render Mr. Derby unable to perform the essential functions of the job, with or without a reasonable accommodation. Because of the inherent limitations of JAWS and the unpredictability of third-party websites, RRI was unable to ensure accessibility for JAWS users to perform the essential functions of the PCC position.

Updates to the third-party websites utilized in the PCC position are frequent and occur on a weekly and sometimes daily basis. (Wright Depo. at pp. 112-113.) The updates to the third-party websites affect the JAWS scripting previously installed and can render a JAWS user unable to perform essential functions of the job; mainly the inability to access the third party websites which encapsulates the large percentage of their job. Without access to the third-party websites utilized by a PCC, an employee cannot perform the essential functions of the position. RRI is unable to

plan for, or reduce the inevitable disruption caused by downtime resulting from updates to third party websites because the updates are installed without notice to RRI.

Plaintiff's expert, Dan Buchness, spent 22.75 hours inspecting the websites and programs utilized in the PCC position. (Buchness Depo., p. 47.) Further, Mr. Buchness testified each application takes approximately 17 hours to diagnose and determine the *possibility* of providing an accessibility solution, and he recognized during his inspection that "it became clear that there were many applications" utilized by a PCC. (Id., pp. 10-12, 48, 51.) Despite Mr. Buchness' 22.75 inspection, he cannot provide an opinion as to whether the PCC position could be made accessible. (Id., pp. 105 – 106, 116.) Even now, Plaintiff's retained expert admits he is unable to provide an opinion concerning a specific type of accommodation that could have made the PCC position accessible for Mr. Derby. (Id.) The undisputed facts demonstrate Plaintiff has not sustained its burden of proving that Mr. Derby was otherwise qualified for the PCC position, with or without an accommodation.

RRI is entitled to summary judgment because Plaintiff has failed establish Mr. Derby was "otherwise qualified" as a matter of law.

### B. <u>Summary Judgment is Warranted on Plaintiff's Failure to Engage in the Interactive Process Claim.</u>

The Sixth Circuit recognizes that "if the employee never requests an accommodation, the employer's duty to engage in the interactive process is never triggered." *Lockard v. Gen. Motors Corp.*, 52 F. App'x 782, 788 (6th Cir. 2002). Furthermore, an employer is not liable for failing to engage in the interactive process unless the plaintiff can show that a reasonable accommodation was possible. *See*, *Lafata v. Church of Christ Home for Aged*, 325 F. App'x 416, 422 (6th Cir. 2009). ("Employers 'who fail to engage in the interactive process in good faith face liability [under the ADA] if a reasonable accommodation would have been possible.'"); *Trout v. Aerospace*

*Testing Alliance*, 303 F. App'x 272, 274 (6th Cir. 2008); *Breitfelder v. Leis*, 151 F. App'x 379, 386 (6th Cir. 2005).

It is undisputed that Mr. Derby never requested an accommodation related specifically to the PCC position. As such, RRI's duty to engage in the interactive process was never triggered. Even now, Plaintiff has failed to establish that an accommodation of Mr. Derby is possible or "objectively reasonable" as required by controlling law. Plaintiff's claim based on failure to engage in the interactive process fails as a matter of law.

### C. RRI is Entitled to Summary Judgment on Plaintiff's Failure to Promote Claim

Plaintiff further alleges that RRI denied Mr. Derby a promotion because of his disability and need for accommodation. (Complaint, Doc. No. 1 ¶ 29, PageID #: 6.)  In order to establish a prima facie case of failure to promote, a plaintiff must demonstrate that: 1) he is a member of a protected class; 2) he applied for and was qualified for a promotion; 3) he was considered for and denied the promotion; and 4) other employees of similar qualifications who were not members of the protected class received promotions at the time her request for promotion was denied. *Nguyen v. City of Cleveland,* 229 F.3d 559, 562-563 (6th Cir. 2000); *Mehr v. Starwood Hotels & Resorts Worldwide, Inc.*, 72 Fed. Appx. 276, 282 (6th Cir. 2003).

Plaintiff cannot make a prima facie case for failure to promote because it cannot show that Mr. Derby applied for the PCC position in question. Mr. Derby never applied for the position; he merely expressed interest in attending the informational seminar, and "possibly" applying to the open position. At most, he expressed only a general interest in the open position, and this is not enough to meet the application requirement.  *Bolden v. Lowes Home Ctrs., LLC*, 783 Fed. Appx. 589, 596 (6th Cir. 2019).

### D.  **Plaintiff's Claim for Punitive Damages Fails as a Matter of Law**

Punitive damages are only available under the ADA when "the complaining party demonstrates that the respondent engaged in a discriminatory practice ... with malice or with reckless indifference." 42 U.S.C. § 1981a(b)(1) (2000). The terms "malice" or "reckless indifference" in 42 USCS § 1981a(b)(1) pertain to employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination. *David v. Caterpillar, Inc.*, 185 F. Supp. 2d 918 (C.D. Ill. 2002).

Here, Plaintiff's claim for punitive damages fails because the undisputed facts fail to establish "malice" or "reckless indifference" as a matter of law. Plaintiff's entire case is based exclusively on an email exchange between Mr. Derby and Ms. Eichelberger. Before the email exchange, Ms. Eichelberger did not know Wesley Derby, and Ms. Eichelberger was not familiar with his JAWS capabilities or work history (Eichelberger Depo. at pp. 81-82, 97.) Because Mr. Derby failed to request an accommodation, Ms. Eichelberger correctly did not interpret his email as a request for an accommodation. (Id. at p. 94-95). The tone of Ms. Eichelberger's e-mail is not malicious; indeed, she used a "smile" emoji. (Id. at Ex. 4.)  Her undisputed testimony establishes her intent was to help Mr. Derby avoid unnecessary expenses (Id. at 96.). Plainly stated, there is no evidence to support a finding that Defendant acted with the requisite "malice", or "reckless disregard" required to support a punitive damages award.

The undisputed facts and controlling law establish that RRI is entitled to summary judgment on Plaintiff's punitive damages claim.

IV.     **CONCLUSION**

The Court should grant summary judgment in favor of RRI because the EEOC has not established that Mr. Derby was "otherwise qualified," Mr. Derby failed to request a reasonable accommodation, Plaintiff has not articulated that a reasonable accommodation exists, and Plaintiff has failed to demonstrate that any proposed accommodation is 'objectively reasonable,' as required to establish a prima facie case and survive summary judgment.

Respectfully submitted,

/s/ *Katherine Kennedy*
Katherine L. Kennedy (0079566)
Andrew J. Weber (0093055)
LEWIS, BRISBOIS, BISGAARD & SMITH, LLP
250 East Fifth Street, Suite 2000
Cincinnati, Ohio 45202
kate.kennedy@lewisbrisbois.com
andrew.weber@lewisbrisbois.com
Tel. 513.808.9911 / Fax 513.808.9912
*Attorneys for Defendant,*
*Red Roof Inns, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of March 2022, the foregoing Motion for Summary Judgment was electronically filed with the Court, electronically serving all counsel of record in this case.

/s/ *Katherine Kennedy*
Katherine Kennedy