IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff | ) ) | No. 3:20-cv-00381 |
| v. | ) ) ) | District Judge Thomas M. Rose  Magistrate Judge Caroline H. Gentry |
| RED ROOF INNS, INC., | ) ) | |
| Defendant. | ) ) ) | |

**PLAINTIFF EEOC'S REPLY TO
DEFENDANT RED ROOF INNS, INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Red Roof Inns, Inc. ("Red Roof") has failed to muster sufficient evidence to support an undue hardship defense in its opposition to the EEOC's Motion for Partial Summary Judgment (Doc. No. 57). As such, the defense fails as a matter of law, and judgment should be entered against Defendant on its undue hardship defense.

### I.     Introduction

Red Roof has not stepped forward with specific facts showing that the purported hardship of accommodating a blind employee in the Property Connectivity Coordinator ("PCC") position would be *undue* in light of Red Roof's overall resources. Despite the passage of nearly four years since Wesley Derby expressed interest in the PCC position, and over a year and a half since this lawsuit was filed, Red Roof has not produced record of a single "update" to software that has caused the position to be inaccessible, much less evidence of the barrage of updates it says will cause unacceptably frequent problems with JAWS accessibility. While Red Roof argues that it can only speculate as to the costs and consequences of future software updates, and that therein

lies the operational hardship, it has had ample time to document and verify that such problems exist, yet it has failed to do so. Moreover, it has not shown how the costs and alleged burden of addressing software updates compare to its overall resources, as required by 42 U.S.C. § 12111(10). Because Red Roof, who bears the burden of showing undue hardship, has not quantified the undue hardship in any meaningful way, summary judgment is appropriate.

**II.     Summary judgment is not premature.**

Summary judgment is neither premature on an affirmative defense nor inappropriate because of the factual nature of the defense.

**A.  Summary judgment is appropriate on affirmative defenses.**

Red Roof argues that summary judgment is premature because the EEOC has not yet made out its prima facie case and Red Roof is "not required to prove its affirmative defense at this stage of litigation." However, Red Roof gives no support for this argument.

Summary judgment is not a disfavored procedural shortcut, but rather "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Federal Rule of Civil Procedure 56 must be construed with due regard for "the rights of persons opposing…defenses to demonstrate…prior to trial, that the …defenses have no factual basis." *Id.* In *Celotex*, the Supreme Court ruled that the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. As said in the EEOC's initial brief, the *Celotex* court further stated that, "[o]ne of the

2

principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims *or defenses*[.]" *Id.* at 323-24 (emphasis added).

As the non-movant, Red Roof is not obligated to *prove* its affirmative defense at this stage, as it worries, but it must produce enough evidence to persuade a reasonable jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("[S]ummary judgment will not lie…if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.") ("[A]t the summary judgment stage[,] the judge's function is not …to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial…. [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.") As discussed further below, it has not produced such evidence.

Red Roof does not offer any supporting authority or persuasive argument for the proposition that summary judgment is less appropriate here than in any other case. That is, it has no support for the idea that it is premature to enter summary judgment on an ADA undue hardship defense despite the authority given by Rule 56 to enter summary judgment on defenses. The only decisions Red Roof cites to in support of this argument fall under Title VII of the Civil Rights Act of 1964 and deal with employee requests for religious accommodations, and neither shows that summary judgment would be premature in this case. (Response, Doc. No. 66 at PageID 1111-12 (citing *Tepper v. Potter*, 505 F.3d 508 (6th Cir. 2007) and *EEOC v. Robert Bosch Corp.*, 169 Fed. App'x 942 (6th Cir. 2006)).) While it is true that there are shifting burdens in an ADA case where a reasonable accommodation is at issue, this does not change the availability of summary judgment under Rule 56 on the defendant's affirmative defense.

3

Red Roof also argues that the reasonableness of an accommodation and undue hardship are factual determinations, inappropriate for summary judgment. In support, Red Roof cites to *EEOC v. Robert Bosch Corp.*, failing to notice that, not only is this case about religious accommodations under Title VII, where different standards apply to the respective parties' burdens than in an ADA accommodation claim, but the selected quote is wholly inapplicable. (*See* Response, Doc. No. 66 at PageID 1112.) The Sixth Circuit in the quoted language is discussing the factual nature of the reasonableness "of an employer's attempt at accommodation"—i.e., whether the efforts the employer took to accommodate the employee's religious beliefs were reasonable. Here, not only is this not a religious accommodation case, but this case is not about the reasonableness of Red Roof's efforts to accommodate Derby in the PCC position. Thus, the decision provides no support for Red Roof's arguments.

In any event, as is well established, summary judgment may be entered on a factual issue where there are either no material facts in dispute, such that a jury trial is unnecessary, or insufficient facts upon which a jury may find for the non-movant. *See* Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). As discussed in the EEOC's initial brief, courts have considered, and entered, summary judgment on the ADA undue hardship defense. *See, e.g.*, *Jankowski v. Dean Foods Co.*, 378 F. Supp. 3d 697 (N.D. Ill. 2019) (ruling in plaintiff's favor on plaintiff's motion). Likewise here, summary judgment may be entered for the EEOC.

### B. Summary judgment should not be withheld because Red Roof's expert has not testified under direct examination.

While summary judgment may be premature where discovery has not yet been completed, *see, e.g.*, *Plott v. Gen. Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1196 (6th Cir. 1995) (discussing procedure under Rule 56(f) for nonmovant to request deferral on summary

judgment pending discovery), there is no argument that summary judgment is premature because a witness has not testified at trial. Red Roof argues summary judgment would be premature because Mark Tudela, its own expert, has not yet testified under direct examination and "is entitled to supplement his testimony at trial." (Response, Doc. No. 66 at PageID 1112.) Red Roof fails to cite to any authority that summary judgment is inappropriate where an expert witness, or any witness, has not testified at trial. To the contrary, summary judgment must be supported, or opposed, as the case may be, by citing to parts of the record, such as "depositions, … affidavits or declarations." Fed. R. Civ. P. 56 (c)(1). If the non-moving party alleges facts are unavailable to it that are essential to support its opposition to the motion, it must show by affidavit or declaration that the facts are unavailable, for specified reasons. Fed. R. Civ. P. 56 (f).

In this case, Tudela has already issued a primary expert report for the defendant and testified in a deposition where Red Roof had the opportunity to examine him, both of which Red Roof cites to in its opposition. (*See, e.g.*, Response, Doc. No. 66 at PageID 1113-14.) If Tudela has additional facts or explanations to offer in support of Red Roof's undue hardship defense, now was the time to present those. Red Roof does not need to directly examine the witness to introduce those facts or explanations—it could have introduced them by affidavit or declaration. Fed. R. Civ. P. 56 (c)(1). Red Roof has offered no affidavit or declaration, in conformance with section (f) of Rule 56, explaining why any facts held by Tudela that he would offer at trial could not be presented now, in support of its opposition.

In response to a motion for summary judgment, the non-moving party must affirmatively demonstrate with "specific facts" that a genuine issue exists that requires trial in order to defeat the motion. *Anderson*, 477 U.S. at 248, 250. Alleging an expert witness might later offer specific facts at trial is insufficient to oppose summary judgment.

### III. Summary judgment is warranted, because Red Roof failed to introduce sufficient material facts upon which a jury could find in its favor.

In its opposition to the EEOC's motion, Red Roof failed to point to evidence in the record that is sufficient for a finding of undue hardship in light of the factors set forth in the ADA at 42 U.S.C. § 12111(10). Because there is insufficient evidence upon which a jury could find undue hardship as defined by the ADA, summary judgment should be entered on this defense.

As explained by the dissenting justices in *Celotex* (on areas of agreement with the majority), on an issue where the non-moving party to a summary judgment motion bears the burden of persuasion at trial, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. "If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law." *Id.* at 331 (J. Brennan, dissenting) (citing *Anderson*, 477 U.S. at 249). The nonmoving party may seek to defeat the motion by calling the court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party, in which event the moving party must respond by making an attempt to demonstrate the inadequacy of this evidence. *Id.* at 332.

Here, Red Roof has not introduced additional facts adequate to defeat the EEOC's motion. As stated in the EEOC's motion, even taking all of Red Roof's evidence and viewing it in the light most favorable to it, this evidence is insufficient to support an undue hardship defense.

### A. Red Roof did not present specific evidence of the nature and cost of the accommodation and the company's financial resources pursuant to 42 U.S.C. § 12111(10).

The EEOC maintained in its initial brief that Red Roof has not quantified a significant expense or established a significant difficulty to make the PCC position accessible. Red Roof's opposition brief still fails to do so.

Red Roof asserts that, contrary to the EEOC's assertion, it is "not required to provide a dollar amount to make the PCC position accessible to defeat summary judgment." Yet, it offers no supporting authority for this argument. (Response, Doc. No. 66 at PageID 1115.) Instead, case law in the Sixth Circuit and other courts show that Red Roof *must* present some quantification of the burden to accommodate Derby, as well as its overall resources, to prevail on its undue hardship defense. For example, in *Smith v. Henderson*, the Sixth Circuit found that summary judgment in favor of the employer, USPS, was inappropriate because, among other reasons, the employer had not presented evidence regarding factors relevant to the undue hardship defense, such as the overall financial resources of the USPS post office at issue, the overall financial resources of the USPS as a whole, and the impact of the accommodation on the post office's ability to conduct business. 376 F.3d 529, 537 (6th Cir. 2004).

In *Reyazuddin v. Montgomery Cty.*, the Fourth Circuit reversed summary judgment for the employer on an undue hardship defense, where the employer alleged it would experience an undue hardship to make computer software accessible for a blind employee who uses screen reader technology. 789 F.3d 407 (4th Cir. 2015). Unlike here, the employer there did produce evidence of the costs to initially make the software accessible, on which basis the district court granted the employer summary judgment. However, even evidence of those costs was not enough for the "multi-factor analysis" required by 42 U.S.C. § 12111(10), the Fourth Circuit

7

found. The district court should have considered the estimated cost in comparison to the employer's overall resources, along with other statutory factors, such as the number of employees, cost savings the employer realized in changing to a new call center, and the employer's existing personnel resources for IT work. *Id.* at 417-18.

In *Jankowski v. Dean Foods Co.*, as discussed in the EEOC's initial brief, the district court granted the plaintiff summary judgment on the employer's undue hardship defense, where the employer failed to identify evidence quantifying the financial burden that would accompany accommodating the plaintiff, as necessary to evaluate the factors in 42 U.S.C. § 12111(10)(B). 378 F. Supp. at 712-13.

Red Roof further insists that it should not be required to give a "dollar amount," because any such amount would just be speculative, in light of the unknown future updates to the Online Travel Agency ("OTA") extranet websites' software. However, this ignores the ample time, opportunity, and ability Red Roof has had to assess the four OTA extranet websites' compatibility with JAWS and document the allegedly frequent updates and their impact on the use of JAWS. Red Roof alone has access to the credentialed entry to the OTA extranet websites, and Red Roof uses those credentials to perform PCC work as a part of its partnership with the OTAs. (Motion Exh. 8, Eichelberger Dep. at 55:24-56:15, Doc. No. 57-8 at PageID 695.) Red Roof also regularly employs the services of a JAWS scripter, Mark Tudela. (Motion Exh. 2, Wright Dep. at 94:23-25, Doc. No. 57-2 at PageID 642; Motion Exh. 6, Gillis Dep. at 63:1-65:2, Doc. No. 57-6 at PageID 682.) Yet, in the four years since Red Roof informed Derby he could not be accommodated in the position, it has not documented a single example of a software update, recorded the frequency with which these updates have occurred, or developed any evidence that the updates required new scripts to work with JAWS. Red Roof's scripter and

8

expert witness in this case, Tudela, was never asked to perform an assessment of the PCC websites at any time during the last four years. (Motion Exh. 5, Tudela Dep. 90:1-91:11, 104:19-21, Doc. No. 57-5 at PageID 667-68.) Red Roof has also failed to document any alleged problem using JAWS with the OTA extranet websites during the pendency of this litigation, despite EEOC's requests through interrogatories for specific information about any assessment Red Roof performed of JAWS compatibility and any problems with JAWS' integration with the third-party websites. (Reply Exh. 1 at 9-10.)

      If Red Roof had performed an assessment of JAWS' compatibility with the four OTA extranet websites over a select period of time, and documented any initial need for scripting and/or any updates that required new scripting, it could have arrived at an estimate of the costs to perform this scripting work on a continual basis. But Red Roof also failed to make a basic attempt at estimating a cost based on the information it does have. Red Roof points in its opposition to the number of hours that Tudela spent scripting other Red Roof programs and the number of hours the EEOC expert states he would need to assess the PCC position's programs. (Response, Doc. No. 66 at PageID 1116.) But it did not perform simple arithmetic with these numbers to show the expected costs, or to compare this cost to its resources, expecting the reader to just assume a resultant burden.

      Importantly, Red Roof offers no proof that the position would frequently have problems with JAWS accessibility, requiring "rescripting." Instead, it repeatedly makes the unsupported leap between Shanna Wright testifying that the four OTA extranet websites experience weekly changes[1] to their sites and the assumption that a JAWS user's ability to access those sites will

---

[1] Red Roof misleadingly states that Wright testified that extranet websites install updates on a weekly and sometimes daily basis. (Response, Doc. No. 66 at PageID 1113, 1114, 1116.) Instead Wright testified, "[T]hose extranets in particular change very frequently, weekly, sometimes, maybe even more often on occasion." (Response Exh. A, Wright Dep. at 113:4-7, Doc. No. 66-1 at PageID 1123.)

9

also change on a weekly basis. (*See* Response, Doc. No. 66 at PageID 1114.) Yet no witness or other evidence establishes that the allegedly frequent changes to the website will cause frequent problems using JAWS. Again, as stated in the EEOC's brief, Tudela only says JAWS scripting "may" no longer be compatible with updated software. (Motion Exh. 3, Tudela Report ¶ 7, Doc. No. 57-3.) Or, he testified, there may be no incompatibility problem. (Motion Exh. 5, Tudela Dep. 125:24-126:8, Doc. No. 57-5 at PageID 672-73.) As such, Red Roof misleadingly and incorrectly states that, when a third-party website updates its software, the JAWS scripting previously installed for that particular website "will be affected." (Response, Doc. No. 66 at PageID 1113.)[2] This lack of evidence alone warrants summary judgment on the undue hardship defense.

Nonetheless, assuming Red Roof could prove that it would frequently need to "re-script" JAWS to enable Derby to perform the essential functions of the PCC position, which the EEOC contends it cannot, Red Roof should not be permitted to rest on the assumption that this scripting would create significant downtime for a JAWS user. Shanna Wright testified that the reason she believed a JAWS user could not hold the PCC position was because of the changes she saw to extranet websites, which she "assum[ed]" would require more scripting, and which she "envision[ed]" would create a lot of down time, as Red Roof would have to reach out to Tudela, "who was not always available." (Response Exh. A, Wright Dep. 113:4-114:8, Doc. No. 66-1 at PageID 1123-24.) The fact that Tudela was "not dedicated to [Red Roof]" and "had a lot of other things," meant there were times related to other JAWS-using employees where Red Roof had to

---

[2] Red Roof also incorrectly states that "Plaintiff's expert…agree[s] that third party websites install updates to their websites without notice to Red Roof" (Response, Doc No. 66 at PageID 1114), when the cited evidence—missing from Red Roof's exhibit—says otherwise. EEOC's expert, Daniel Buchness, testified he disagrees with that statement with regard to extranet partner websites. (Reply Ex. 2; Buchness Dep. at 73:8-25.)

"wait for Mark's availability to free up." (Id. at 113:13-17, PageID 1123.) In other words, Wright assumed Derby could not be accommodated in the PCC position because Tudela would be busy with other clients.

However, Tudela's unavailability is not a lawful reason to deny an accommodation or sufficient evidence of an undue hardship. An employer has an obligation under the ADA to determine an appropriate accommodation and to consider alternative accommodations that do not cause an undue hardship. *See* 29 C.F.R. § 1630.2(o)(1)-(3); 20 C.F.R. Appx. § 1630.9; *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018) (employer has a duty to engage in an interactive process to identify potential reasonable accommodations that would overcome an employee's limitations). Red Roof has failed to account for resources available to address the alleged scripter availability problem and alleviate downtime. For example, Red Roof has not provided a cost for putting Tudela on contract to be more readily available, hiring a JAWS scripter on its staff, or training a current IT employee on JAWS scripting, so that an in-house scripter could be ready to address JAWS scripting problems, should they arise, the way Red Roof's IT staff handles other technical problems that employees encounter. (Reply Exh. 3, Eichelberger Dep. 36:3-37:18.) *See, e.g.*, *Nelson v. Thornburgh*, 567 F. Supp. 369, 376 (E.D. Pa. 1983), aff'd, 732 F.2d 146 (3d Cir. 1984), and aff'd sub nom. *Appeal of Thornburgh*, 732 F.2d 147 (3d Cir. 1984) (discussing possible combinations of accommodations, including an on-staff reader, for a blind employee and the relative costs of each); *Reyazuddin*, 789 F.3d at 417 (discussing technical resources available for accommodating blind call center employee).

Finally, in addition to assembling cost estimates as discussed above, Red Roof should have given a "dollar amount" for its financial resources, to which the ADA requires the accommodation costs be compared. 42 U.S.C. § 12111(10). Costs of an accommodation can only

11

be considered "undue" if sufficiently compared to the resources of the facility, the overall resources of Red Roof as a whole, and the benefit to the company. 42 U.S.C. § 12111(10)(B). *See, e.g., Reyazuddin*, 789 F.3d 407, 417-18 (4th Cir. 2015); *Smith*, 376 F.3d 529, 537 (6th Cir. 2004). As the EEOC noted in its initial brief, Red Roof has indicated its revenue reached $657 million in the first nine months of 2021. (Motion, Doc. No. 57 at PageID 600.) Red Roof has done nothing in its opposition to dispute this evidence or explain why, in light of the company's revenue, it cannot afford options to address alleged problems with JAWS scripting as they arise. Further, the relative cost of an accommodation must also be assessed in consideration of the other factors in the statute. Red Roof has a number of blind and visually impaired employees who use JAWS and require periodic technical assistance with JAWS. (Motion Exh. 6, Gillis Dep. at 61:8-13, 63:1-65:2, Doc. No. 57-6 at PageID 681-82; Motion Exh. 5, Tudela at 71:1-75:1, Doc. No. 57-5 at PageID 663-64.) The cost of, for example, having an in-house JAWS scripter must be considered in light of the benefit to Red Roof's other visually impaired employees, the operation of the company as a whole, and the company's finances, as it would no longer need to contract out for Tudela's scripting services.

The ADA requires an employer to provide evidence to support its defense that failure to accommodate a disabled employee is due to undue hardship. Red Roof's argument that it cannot possibly know the costs is unavailing, and its failure to offer any cost associated with accommodating a blind JAWS user in the PCC position, or a comparison with its financial resources, is grounds for summary judgment against the company on its defense.

**B. Red Roof did not present sufficient evidence of a significant difficulty in accommodating Derby pursuant to 42 U.S.C. § 12111(10).**

Red Roof may be arguing that a "dollar amount" is unnecessary, because any alleged undue hardship is an operational one, rather than a financial one, where a JAWS user such as

12

Derby will not be able to perform the essential functions of the job because of the alleged frequent updates to the OTA extranet websites. (Response, Doc. No. 66 at PageID 1113-14.) However, there are two problems with this assertion. First, Red Roof's evidence fails to establish this anticipated problem. Second, Red Roof still must quantify the operational hardship in some meaningful way for a jury to properly consider it in light of the statutory factors in 42 U.S.C. § 12111(10). *See, e.g.*, *Jankowski*, 378 F. Supp. 3d 697 (where defendant alleged accommodating plaintiff's disability would have affected efficiency of operations but failed to quantify the burden as required by statute).

As to the first problem, Red Roof fails to offer sufficient evidence for a jury to find that updates to the OTA software will cause a JAWS user to be unable to perform the essential functions of the job. Red Roof makes several, unsubstantiated leaps to reach that conclusion. It offers the following facts: testimony of Shanna Wright that there are frequent updates to the websites; Tudela's report and testimony that software updates *may* cause problems with JAWS scripting; and Tudela's report that re-scripting for JAWS *may* cause "downtime." (Response Exh. A, Wright Dep. at 113, Doc. No. 66-1 at PageID 1123; Response Exh. B, Tudela Dep. at 130-31, Doc. No. 66-2 at PageID 1133; Response Exh. B, Tudela Report ¶ 7, 10, Doc. No. 66-2 at PageID 1136.) From there, Red Roof leaps to the conclusions that "[w]hen a third-party website updates its software, the JAWS scripting previously installed for that particular website *will be affected*," and that "a JAWS user's access to those websites…is changing on a weekly basis." (Response, Doc. No. 66 at PageID 1113, 1114. Emphasis added.)

Yet, there is no evidence bridging 1) the gap between the frequency of updates to the software and the frequency of problems, if any, with JAWS scripting, or 2) the gap between the frequency of problems, if any, with JAWS scripting, and any resultant downtime for a JAWS

13

user. As discussed in the EEOC's initial brief, the record shows that Red Roof's expert, Mark Tudela, acknowledged a website update could be innocuous or previous JAWS scripting could survive the change. (Motion Exh. 5, Tudela Dep. at 125:24-126:8, Doc. No. 57-5 at PageID 672-73.) Even with a problem, a more highly skilled JAWS user could find another way to navigate the site, or JAWS may be used "manually" to navigate a site without scripting. (*Id*. at 134:24-135:22, PageID 674.)

If Red Roof had evidence to bridge these gaps it should have presented it. Again, although Red Roof insists it cannot produce evidence of "future" updates, it could have taken steps in the last four years to document software updates to the OTA extranet websites and the effect, if any, on JAWS, but it failed to do so. Without a smidgeon of concrete evidence, and only speculation of the possibilities of broken scripts and downtime, there is just not enough evidence for a jury to evaluate Red Roof's allegation of operational hardship.

As to the second problem, this alleged operational hardship must still be considered in light of the factors in 42 U.S.C. § 12111(10). That is, even if Red Roof had produced sufficient evidence to establish frequent problems with using JAWS with the OTA extranet websites, it has not demonstrated that it cannot afford, financially or operationally, to address those problems as they arise. It has not introduced any evidence that, for example, having a scripter onsite (through hiring an on-staff scripter or training IT staff to perform JAWS scripting) to address the allegedly frequent "rescripting" needs would be an unmanageable option. Nor has Red Roof produced evidence quantifying, in any way, the effect of downtime on the operation of the Online Connectivity Team or the company as a whole. *See, e.g.*, *Smith v. Henderson*, 376 F.3d at 537 (defendant failed to present evidence of the impact of the accommodation on the facility's ability to conduct business); *Jankowski*, 378 F.Supp. 3d at 712-13 (defendant failed to quantify the

14

financial burden of an alleged lack of productivity from accommodating plaintiff). Instead, it suggests it can meet its burden by simply asking the jury to assume the amount of downtime Derby would have experienced and assume the effect on Red Roof's operations.

Without actual evidence of the website software updates Wright testified to, and how those affect JAWS, a jury cannot assess the undue hardship argument in light of the factors it must consider in 42 U.S.C. § 12111(10). As such, Red Roof has failed to present a triable issue on its undue hardship defense, and partial summary judgment is appropriate in the EEOC's favor.

## IV.  Conclusion

Red Roof has raised several arguments as to why accommodating Derby with JAWS in the PCC position would be an undue hardship. But Red Roof presents no legal authority to support its arguments and insufficient facts upon which a jury could evaluate the factors in 42 U.S.C. § 12111(10). Because Red Roof has failed to proffer sufficient evidence to support this defense, the defense fails as a matter of law. The EEOC respectfully requests the Court grant judgment in its favor on Red Roof's affirmative defense of undue hardship.

Respectfully submitted,

s/ Alysia Robben
Alysia Robben, Trial Attorney
Aimee McFerren, Senior Trial Attorney
U.S. EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Louisville Area Office
600 Dr. Martin Luther King Jr. Place
Suite 268
Louisville, Kentucky 40202
(502) 694-3976 (direct)
(502) 582-5435 (fax)
alysia.robben@eeoc.gov
aimee.mcferren@eeoc.gov

15