UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | : : : | |
| | : | Case No. 3:20-cv-381 |
| Plaintiff, | : : | Judge Thomas M. Rose |
| v. | : : | |
| RED ROOF INNS, INC., | : : | |
| Defendant. | : | |

**ENTRY AND ORDER GRANTING PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE AND TESTIMONY OF WESLEY DERBY'S PERFORMANCE, TERMINATION AND SUBSEQUENT CHARGE OF DISCRIMINATION (DOC. NO. 77)**

This case is before the Court on the Motion in Limine to Exclude Evidence and Testimony of Wesley Derby's Performance, Termination and Subsequent Charge of Discrimination (the "Motion"), filed by Plaintiff Equal Employment Opportunity Commission ("EEOC"). Defendant Red Roof Inns, Inc. ("Red Roof") filed a response in opposition to the Motion (Doc. No. 82) (the "Response"), and the EEOC filed a reply in support of the Motion (Doc. No. 85) (the "Reply"). The Motion is fully briefed and ripe for decision.

For the reasons discussed below, the Court **GRANTS** the Motion. The evidence at issue is not relevant and, even if it had some limited relevance, its probative value would be substantially outweighed by a danger of unfair prejudice and/or confusing the issues. Red Roof is barred from offering the following evidence at trial: (1) Wesley Derby's performance as a Guest Relations agent subsequent to May 3, 2018; (2) the circumstances of Wesley Derby's termination from Red Roof on September 25, 2018; and (3) Wesley Derby's filing of Charge No. 473-2019-00135,

1

alleging retaliatory discharge.

## I. ANALYSIS

### A. Background

The Court assumes that the parties are familiar with the general background of this case and will not delve too deeply into its facts and issues.[1] The EEOC asserts two claims pursuant to the American with Disabilities Act ("ADA"): a failure to accommodate claim and a failure to promote claim. (Doc. No. 73 at PageID 1228, 1239.) These claims stem from a series of emails—sent on May 2 and May 3, 2018—between a visually-impaired Red Roof employee (Wesley Derby ("Derby")) and a Red Roof employee who was responsible for filling an open position at the company (Cheryl Eichelberger ("Eichelberger")). (*Id.* at PageID 1232-36.) Derby worked as a Guest Relations agent for Red Roof, and the open position was with the Online Connectivity Team that Eichelberger supervised. (*Id.* at PageID 1229, 1230-32.)

More specifically, in response to a May 2, 2018 email announcing an information seminar related to a recent posting for the open position, Derby stated: "I'm interested in attending...However, is there an option to attend via Skype or some other remote option? Being blind, I don't drive, and the Uber ride from Columbus to Springfield and back would be a couple days' pay. So, if there's a distance option, I'm interested in checking this out and possibly applying." (Doc. No. 73 at PageID 1233.) In response, on May 3, 2018, Eichelberger told Derby:

> Thanks so much for your interest. Unfortunately, the systems that we work with do not integrate with the JAWS system, so we are not able to accommodate as far as hiring. However, if you are looking to advance your knowledge of what happens behind the scenes, we are happy to accommodate. I just don't want you to waste your time if you were looking to apply. With this being our first seminar, we would like to get the bugs worked out before we offer it via Skype. We will be holding more seminars in the near future for informational purposes for other departments, so it may be more beneficial for you to attend one of those when we can Skype you

---

[1] For additional background, see *Equal Emp. Opportunity Comm'n v. Red Roof Inns, Inc.*, No. 3:20-cv-381, 2022 WL 3369519 (S.D. Ohio Aug. 16, 2022) (order ruling on summary judgment motions in this case).

2

in.

(*Id.*)  At the time that Eichelberger sent her response, no additional seminars were scheduled, and she never ended up scheduling another seminar. (*Id.* at PageID 1236.)  Red Roof filled the open position with a person who was not visually-impaired. (*Id.* at PageID 1245.)

### B. Legal Standards for Addressing Motions *In Limine* and Applying Fed. R. Evid. 402 and 403

District courts adjudicate motions in limine under their "inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984).  The purpose of a motion *in limine* is "to narrow the issues remaining for trial and … minimize disruptions at trial." *U.S. v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999).  Courts should exclude evidence pursuant to a motion in limine "only when evidence is clearly inadmissible on all potential grounds." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).  The Sixth Circuit advises that the "better practice" is to address questions regarding the admissibility of broad categories of evidence "as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).  Courts are "almost always better situated during the actual trial to assess the value and utility of evidence." *In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 348 F. Supp. 3d 698, 721 (S.D. Ohio 2016).

"A ruling on a motion in limine is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *U.S. v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).  The district court may change its ruling on the motion in limine, whether prior to trial or at trial, "where sufficient facts have developed to warrant the change." *Id.*  Thus, denial of a motion in limine does not necessarily mean the evidence that is the subject of the motion will be admissible at trial. *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

The Federal Rules of Evidence provide that "[e]vidence is relevant if: (a) it has any

tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court.  Irrelevant evidence is not admissible." Fed. R. Evid. 402.

Even if evidence is relevant, it may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Thus, "Rule 403 provides a balancing test for excluding relevant evidence." *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018).  A court may, for example, find that relevant evidence should be excluded when it has little probative value and there would be a substantial risk of unfair prejudice, confusion of the issues, and/or any of the other dangers listed in Rule 403.  *Journey Acquisition-II, L.P. v. EQT Prod. Co.*, 830 F.3d 444, 459-60 (6th Cir. 2016); *see also United States v. Hazelwood*, 979 F.3d 398, 412 (6th Cir. 2020) ("[u]nfair prejudice" is defined "as the undue tendency to suggest a decision based on improper considerations").

### C. Application

In the Motion, the EEOC asks this Court "to exclude the following evidence and testimony related to Wesley Derby that occurred after the events at issue in this lawsuit: 1) his performance subsequent to May 3, 2018; 2) his termination on September 25, 2018; and 3) his filing of Charge No. 473-2019-00135, alleging retaliatory discharge." (Doc. No. 77-1 at PageID 1368.)  The EEOC explains that, regarding his Guest Relations agent position, "[i]n July 2018, Mr. Derby received a written counseling for failing to maintain a passing monthly average call qualify score for May and June 2018." (*Id.* at PageID 1369.)  Then, "[i]n September 2018, Mr. Derby was placed on probation for having low call quality scores in August 2018." (*Id.*)  "On September 25, 2018, Mr.

4

Derby was fired for prematurely disconnecting a customer call." (*Id.*) Finally, "Mr. Derby later filed Charge No. 473-2019-00135, alleging retaliatory discharge." (*Id.*) The EEOC did not pursue that later charge of retaliatory discharge. (Doc. No. 82 at PageID 1460; Doc. No. 85 at PageID 1516.)

The EEOC argues that "[p]resentation of such testimony and evidence is irrelevant to the disability discrimination claims at issue, and risks unfair prejudice, confusion of the issues, and wasting of the jury's and Court's time." (Doc. No. 77-1 at PageID 1368.) It contends that "[t]he jury must focus on Red Roof's treatment of Mr. Derby on May 3, 2018, when it denied him an accommodation to participate in the seminar and claimed it could not hire him for the [open] position because the systems used in the position do not integrate with JAWS, and not because of his performance, subsequent discipline or termination." (*Id.* at PageID 1371-72.) It further asserts that "[a]llowing presentation of such evidence could mislead the jury into believing that Mr. Derby's later discipline or termination somehow justifies Red Roof's treatment of him on May 3, 2018 or weakens the legitimacy of the EEOC's disability discrimination claims." (*Id.*) The EEOC relies on Federal Rules of Evidence 402 and 403 to support its arguments. (Doc. No. 77-1.)

In response, Red Roof argues that "[t]his evidence is relevant to any jury verdict and punitive damages award, and it is improper to withhold this information from the jury." (Doc. No. 82 at PageID 1459.) However, Red Roof does not explain how this evidence "is relevant to any jury verdict and punitive damages award," nor does Red Roof cite any legal authority in its Response. The Court agrees with the EEOC that the evidence at issue—all of which post-dates the email exchange between Derby and Eichelberger and does not relate to the open position with the Online Connectivity Team—is irrelevant to the claims before the jury. *See Equal Emp. Opportunity Comm'n*, 2022 WL 3369519 at *7-9 (setting forth framework for analyzing the

5

alleged ADA violations); *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 869 (6th Cir. 2007).

In fact, Red Roof agrees that the evidence at issue is irrelevant to liability. (Doc. No. 82 at PageID 1460 (Red Roof acknowledging that "any evidence of Wesley Derby's job performance, termination, and subsequent charge of discrimination are not relevant to the determination of whether discrimination did in fact occur"). Instead, Red Roof's objection is based on its fear of a hypothetical scenario in which Red Roof would attempt to portray Derby as a "model employee during his [entire] tenure at Red Roof." (Doc. No. 82 at PageID 1460.) However, the EEOC would not—and should not—attempt to make such a portrayal because it is not true with respect to Derby's entire tenure, as shown above. Thus, the Court bars the EEOC from attempting to make such a portrayal.[2]

Finally, regarding punitive damages, the summary judgment order in this case explained that:

> The ADA permits an award of punitive damages if the complaining party demonstrates that the employer engaged in a discriminatory practice 'with malice or with reckless indifference' to an employee's federally protected rights. *Bates v. Dura Auto. Sys., Inc.*, 767 F.3d 566, 582-83 (6th Cir. 2014); *see also* 42 U.S.C. §§ 1981a(a)(2) & (b)(1). 'The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination.' *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999).

*Equal Emp. Opportunity Comm'n*, 2022 WL 3369519 at *18. The Court does not see how the evidence at issue in the Motion is relevant to punitive damages, including to the three-part inquiry

---

[2] Of course, this does not preclude either party from submitting evidence regarding whether, at the relevant time, Derby was qualified for the open position with a reasonable accommodation. *See Kleiber*, 485 F.3d at 869 ("(1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is 'otherwise qualified' for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged 'essential' job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer."). The EEOC acknowledges that it "has not moved to limit evidence or testimony of Mr. Derby's skills and qualifications, or performance at Red Roof *prior* to May 3, 2018." (Doc. No. 85 at PageID 1515 (emphasis in original).)

from the *Kolstad* case that is used to assess the appropriateness of a punitive damage award. *Id.*; *see also E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1072 (6th Cir. 2015) (explaining the three-part inquiry). And, Red Roof simply states that the evidence at issue is relevant to punitive damages; Red Roof fails to actually explain why it would be or provide any legal authority for that assertion. (*See* Doc. No. 82.) Therefore, the Court has no reason to believe that the evidence is relevant to punitive damages.

In summary, the Court finds that the evidence at issue is not relevant and, therefore, is barred from admission at trial. Fed. R. Evid. 402 ("Irrelevant evidence is not admissible"); *Reinig v. RBS Citizens, N.A.*, No. 15-cv-1541, 2017 WL 3706285, at *2 (W.D. Penn. Aug. 28, 2017) (granting motion in limine to bar evidence regarding plaintiffs' performance issues unless the evidence pertained to attendance, timekeeping, overtime usage, or commission deficits, i.e., issues relevant to their claim that the defendant had a policy or practice that caused plaintiffs not to report all hours worked). Additionally, to the extent that the evidence at issue has some limited relevance, it is barred from admission at trial because its probative value would be substantially outweighed by a danger of unfair prejudice and/or confusing the issues. Fed. R. Evid. 403. The categories of evidence at issue are not broad, and the Court is unaware of any grounds on which such evidence would be admissible so long as the EEOC does not improperly attempt to portray Derby as a model employee during his entire tenure at Red Roof.

## II.     CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motion in Limine to Exclude Evidence and Testimony of Wesley Derby's Performance, Termination and Subsequent Charge of Discrimination (Doc. No. 77). Defendant Red Roof will be barred from offering the following evidence at trial: (1) Wesley Derby's performance as a Guest Relations agent subsequent to May

7

8

3, 2018; (2) the circumstances of Wesley Derby's termination from Red Roof on September 25, 2018; and (3) Wesley Derby's filing of Charge No. 473-2019-00135, alleging retaliatory discharge. Correspondingly, the EEOC is barred from attempting to portray Derby as a model employee during his entire tenure at Red Roof.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, December 15, 2022.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE